UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

SARAH LEE,
                                                 Case No. 3:15-cv-0165-AC

                    Plaintiff,                          OPINION AND ORDER

        v.

TREES, INC., a Delaware corporation, and
PAUL SIMS, an individual,

                    Defendants.
_____

ACOSTA, Magistrate Judge:

      Plaintiff Sarah Lee ("Lee") filed this lawsuit against her employer, Defendant Trees, Inc.

("Trees"), and her supervisor, Defendant Paul Sims ("Sims") (collectively, "Defendants"), alleging

employment discrimination and sexual harassment. Before the court is Defendant Trees's Motion

( ECF No. 93) for Terminating Sanction ("Motion"), in which Defendant Sims joins. (ECF Nos.

103, 104.)[1]  For the reasons detailed below, Defendants' Motion is granted.[2]

*Background*

Lee was working as a flagger for Trees when, in May 2013, she and Sims began a consensual romantic relationship.  (Compl. at 3; Declaration of Courtney Angeli, ("Angeli Decl.") Ex. B at 2.) According to Lee, when she sought to end the relationship several weeks later, Sims made numerous threats against her job unless she continued the sexual relationship.  (Compl. at 3; Angeli Decl. Ex. B at 2–3.)  This alleged harassment continued approximately from June 2013 until November 2013, when Lee permanently ended the relationship.  (Compl. at 3–4.)  Ten days later, on December 3, 2013, Trees terminated Lee's employment.  (*Id.* at 4.)

On December 19, 2013, Lee filed an administrative complaint against Trees with the Bureau of Labor and Industries ("BOLI") and the U.S. Equal Employment Opportunity Commission ("EEOC").  (Declaration of Maureen Klayman, ("Klayman Decl.") Ex. A at 8–9.)  The complaint alleged verbal sexual harassment by two of Lee's former co-workers. (*Id.*)  According to the complaint, Lee reported the disparaging comments to Sims, who then disciplined the co-workers, but the harassment continued. (*Id.*)  Trees denied the allegations. (Klayman Decl. at ¶3.)

In March 2014, Lee filed another administrative complaint with BOLI and the EEOC. (Klayman Decl. Ex. B at 5–7.)  This second complaint detailed *quid pro quo* sexual harassment by Sims and Trees related to Sims and Lee's relationship and the alleged threats at its close, a hostile work environment caused by slurs from another Trees employee, and that her termination was

---

[1] The Defendants requested oral argument on the pending Motion. The court finds the Motion appropriate for disposition without oral argument pursuant to LR 7-1(d)(1) and denies this request.

[2] The parties have consented to jurisdiction by magistrate judge pursuant to 28 U.S.C. § 636(c)(1).

retaliatory. (*Id.* at 6–7.) Again, Trees filed a response denying the allegations. (Klayman Decl. at ¶5.)

While employed by Trees, Lee had "three or four," or "maybe five" cell phones, all of which were capable of sending and receiving text messages. (Declaration of Louis A. Santiago ("Santiago Decl.") Ex. E at 51.) Lee told the BOLI investigator assigned to both complaints that she "ha[d] text messages" in which she "asked [Sims] to stop the relationship" that she could provide for review. (Angeli Decl. Ex. B at 6.) More than a month later, on September 16, 2014, Lee faxed printed copies of several purported text messages to her then-attorney, Eric Fjelstad, who forwarded the copies to BOLI. (Angeli Decl. Ex.C; Santiago Decl. Ex. C at 255–57) On September 29, 2014, Lee provided, and Fjelstad forwarded, additional print copies of yet more alleged text messages Lee claimed supported her allegations. (Santiago Decl. Ex. D at 259–60.)

Based at least in part on the text messages, BOLI issued two respective Notices of Substantial Evidence Determination and notices of her right to file civil suit on the matters. (Klayman Decl. Exs. C, D, E, F.) In reaching those determinations, the BOLI investigator noted "Sims has stated that [Lee] may have modified or created some of the text messages she provided . . . . However, he was not able to provide any evidence to dispute the authenticity of the text messages." (Klayman Decl. Ex. C at15.)

In January 2015, Lee filed this lawsuit in which she alleges Title VII gender discrimination and state law claims. (Compl. at 5–10.) Defendants answered, denying the allegations, Sims's initial consensual relationship with Lee notwithstanding. (Def. Trees's Answer, ECF No. 6; Defendant Sims's Am. Answer, ECF No. 37.) During initial disclosures, Trees requested that Lee provide her supporting materials "in electronic form in their native format," but Lee produced only the same

print copies provided to BOLI and, after a second request for production, only one of her four or five cell phones. (Motion at 10 n.46; Santiago Decl. at ¶7; Angeli Decl. at ¶7.)

Defendants retained Joel Brillhart, a certified forensic computer examiner, to inspect and analyze Lee's cell phone. Brillhart holds a B.S. from Central Washington University, owns and operates a forensic computer and cell phone analysis consultancy, and previously served as a Certified Computer and Cell Phone Forensics Examiner on the FBI's Domestic Terrorism and Cyber Squad during his 22-year tenure as a Special Agent for the FBI. After leaving the FBI, Brillhart provided independent forensic computer services in Iraq to the U.S. military and then assumed his current occupation, owner of Professional Forensic Services LLC, in which capacity he has been retained in approximately 300 cases to examine computer and cell phones. Brillhart also is a current member of the International Association of Computer Investigative Specialists, which requires as a condition for membership and certification continuing education and a proficiency examination every three years. (Declaration of Joel Brillhart ("Brillhart Decl.") at ¶¶ 3–11; Ex. A.)

Brillhart's forensic examination of Lee's cell phone revealed that many of the text exchanges for which Lee provided printed versions had been fabricated. (*Id.* at ¶¶ 17–33.) In his declaration, Brillhart describes the methodology and analysis by which he obtained the data upon which his conclusions are based. He created a "forensic Physical image" of the phone to extract a "bit-by-bit copy of the phone's [] memory," including all text messages, call logs, files, and deleted data. (*Id.* at ¶¶13-20.) Inspection of the forensic image found at least 44 of the text messages that had been included in the print copies Lee provided actually resided in the phone's "unsent" folder. (*Id.* at ¶15.) These messages contained time-stamps not from mid-2013, the period of the alleged harassment, but from almost a year later, September 10–12, 2014, the date just before Lee's printed

versions of the texts were sent to the BOLI investigator. (*Id.* at ¶¶15–16; Ex. B at 1–4.) Several other of the messages supposedly sent by Sims and contained in Lee's printed text conversations were in fact real texts sent from Sims's phone during the 2013 relationship, but they appeared to be only "fragment[s]" of other, longer text conversations. (*Id.* at ¶¶ 21–25, 33.) Brillhart therefore deduced at least seven of the discrete text exchanges detailed in the printed copies provided by Lee were not "authentic [] message strings," but rather excerpts of real text messages "interspersed" with unsent messages drafted on Lee's phone. (*Id.* at ¶33.) This conclusion is consistent with Sims's repeated contentions that he never sent or received the text messages that Brillhart subsequently found in the "unsent" folder in Lee's phone. (Declaration of Paul Sims at ¶2.)

In January 2016, after Brillhart produced his report, the parties began settlement negotiations. (*See* Findings and Conclusions on Def. Sims's Motion to Enforce Settlement Agreement, ECF No. 112 at 4–7.) These discussions culminated in March 2016 when Lee informed Fjelstad she no longer wished to settle. (*Id.* at 7.)[3] Shortly thereafter, Fjelstad withdrew as Lee's counsel. (Notice of Attorney Withdrawal, ECF No. 34; Granted, ECF No. 36.)

Based on the accusations of evidence falsification described above, Defendants now move for terminating sanctions. Defendants seek dismissal of Lee's claims with prejudice or, in the alternative, lesser issue, evidentiary, and instructional sanctions against Lee. (Motion at 5–6.) Lee denies the allegations of evidentiary misconduct and argues sanctions are unwarranted, but she contends that should the court find the evidence "suspect," lesser sanctions suffice. (Pl.'s Response Brief, ECF No. 100 at 2.)

---

[3] This court has since enforced the settlement agreement between Lee and Sims, and all claims as to Sims have been finally adjudged. (ECF No. 112.)

*Legal Standards*

A party has a duty to preserve evidence when it knows or reasonably should know the evidence is potentially relevant to litigation and when the destruction of that evidence prejudices the opposing party. *See Kitsap Physicians Serv.,* 314 F.3d at 1001 (A party "engage[s] in spoliation of [evidence] as a matter of law only if they had some notice that the [evidence was] potentially relevant to . . . litigation before [it was] destroyed."). "The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *World Courier v. Barone,* No. C 06–3072 THE, 2007 WL 1119196, at *1 (N.D. Cal. Apr. 16, 2007) (quotations and citation omitted); *Performance Chevrolet, Inc. v. Market Scan Info. Sys.,* No. CV–04–0244–BLW, 2006 WL 1042359, at *1 (D. Idaho Apr. 18, 2006) ("The majority of courts have held that pre-litigation destruction can constitute spoliation when litigation was 'reasonably foreseeable' but not where it was 'merely possible.' " (citations omitted)).

Courts have inherent powers to manage their own affairs "so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). These inherent powers include the inherent authority to impose sanctions based on a party's failure to preserve relevant evidence. *U.S. ex rel. Berglund v. Boeing Co.*, 835 F. Supp. 2d 1020, 1049 (D. Or. 2011). Available sanctions under the court's inherent authority include: (1) excluding spoiled evidence; (2) admitting evidence of the circumstances of the destruction or spoliation; or (3) instructing the jury that it may infer that the spoiled or destroyed evidence would have been unfavorable to the responsible party. *Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir. 1993).

The severe sanction of dismissal is available when "a party has engaged deliberately in

deceptive practices that undermine the integrity of judicial proceedings" because "courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Leon v. IDX Sys. Corp,* 464 F.3d 951, 958 (9th Cir. 2006)(citation and internal quotations omitted). Termination sanctions can be implemented when the court finds a party has engaged abusive litigation practices. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 916 (9th Cir. 1987). "Abusive practices" include perjury, filing false pleadings, and falsifying evidence. *See Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir.1991) (affirming dismissal for falsifying a deposition); *TeleVideo Sys., Inc.*, 826 F.2d at 917 (affirming entry of default judgment for perjury and false pleadings); *Sell v. Country Life Insurance Company*, 189 F.Supp.3d 925, 944 (D. Ariz., June 1, 2016) (dismissing a case for presenting false deposition and hearing testimony to create a "false narrative"); and *Stewart v. RockTenn CP, LLC*, No. 3:13-CV-2147-AC, 2016 WL 3566731, at *3 (D. Or. June 29, 2016) (terminating a case for submitting "sworn statements to the court that misrepresented the facts of the case").

Before a district court imposes the sanction of dismissal, it must weigh several factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Anheuser–Busch, Inc. v. Natural Beverage Distribs.,* 69 F.3d 337, 348 (9th Cir. 1995). The harsh sanction of dismissal must be supported by a finding of "willfulness, fault, or bad faith." *Leon,* 464 F.3d at 958. Lastly, due process concerns require a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression "threaten[s] to interfere with the rightful decision of the case." *Wyle v. R.J. Reynolds Indus., Inc.,* 709 F.2d 585, 591 (9th Cir. 1983). *See also Phoceene*

*Sous-Marine, S.A. v. U.S. Phosmarine, Inc.,* 682 F.2d 802, 806 (9th Cir. 1982) (default entry violated due process where the sanctioned party's deception was wholly unrelated to the merits of the controversy).

*Discussion*

I.      Evidentiary Issue.

Because the authenticity of the text evidence rests largely on Brillhart's expert testimony, the court first considers whether the testimony is admissible and reliable under the appropriate evidentiary rules. Under Federal Rule of Evidence 702, the district court is tasked with the gate-keeping function mandated by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to determine the admissibility of expert witness testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 147 (1999). This typically "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93 (footnote omitted).

Lee does not challenge Brillhart's qualifications or methodology, and the court finds, based on the record, that Brillhart is qualified as a forensic computer expert. Brillhart is a certfied forensic computer examiner with substantial experience in the subject, including cell phones specifically, and he worked in that capacity for the FBI. The physical image extraction technique he employed is consistent with the techniques this court has seen employed in civil and criminal cases in which computer and cell phone data evidence is part of the discovery or evidence in the case. Thus, Billhart's analysis bears the appropriate indicia of reliability, is consistent with the methodology accepted in this field, and therefore is scientifically valid. Applying this methodology to the facts

here, Brillhart's reasoning and subsequent conclusion — that the text exchanges were falsified by drafting unsent messages and splicing them with fragments of real text messages — is a logical one soundly based on the evidence provided. As such, the court accepts Brillhart's testimony as admissible under *Daubert.*

Lee states she did not falsify the text messages. (Deposition of Sarah Lee, Harnden Decl. Ex. A at 2.) She cites *Asia Pac. Agr. & Forestry Co. v. Sester Farms*, No. 3:12 CV 00936 PK, 2013 WL 4742934, at *11 (D. Or. Sept. 3, 2013), arguing a disputed allegation of evidentiary fabrication should be subject to a clear and convincing standard and that "it may be appropriate to resolve the dispute on the basis of factual findings following an evidentiary hearing." In *Asia Pac. Agr.*, a plaintiff company sued a defendant seller for supplying non-conforming goods and supported its prayer for consequential damages by proffering a purported contract with a third party. *Id.* at *6. The defendant seller challenged the contract, however, noting that inconsistencies in the order timeline and little information about the third party called into question its authenticity. *Id.* In an attempt to corroborate the contract, the plaintiff offered into evidence an unsigned, general document "stating that the purported contract is genuine . . . ." *Id.*

As discovery in the case progressed, the plaintiff company repeatedly obstructed the process, including "providing patently inadequate interrogatory responses, repeatedly withholding responsive documents, refusal to cooperate in discovery disputes, and failing to meet multiple discovery deadlines, including those imposed by court order. *Id.* at *6– *7. Defendant, having "obtained [no] meaningful discovery" in more than a year, moved for terminating sanctions, "premised both on [plaintiff']s proffer of (and attempted reliance on) the [third-party] contract and [its] dilatory performance of its discovery obligations and failure to comply with [the] court's order . . . ." *Id.* at

\*11.

The court first addressed the allegedly fabricated contract, agreeing that "the circumstances attendant" on the contract and the unsigned, general statement of authenticity "strongly suggest the possibility — but not the certainty — that the document was fabricated for purposes of this litigation." *Id.* at \*11. Nevertheless, given the plaintiff's "emphatic representations of the document's authenticity," the court "declined to find that [plaintiff] fabricated the [] contract in the absence of an evidentiary hearing on the matter." *Id.* "Setting entirely aside the question of the purported [contract]'s authenticity," the court then held the plaintiff's "conduct in litigating th[e] action [to be] egregious, amounting to failure to participate in any meaningful way in the discovery process," which was "willful, in bad faith, and intentionally calculated to interfere with the court's ability to weigh the merits of the claims before it . . . ." *Id.* at \*11–\*12. The court therefore did "not order or recommend" and evidentiary hearing on the question of the contract's authenticity, because the plaintiff's "continued dilatoriness" was independently sufficient to warrant dismissing its case with prejudice. *Id.* at \*12.

Lee's reliance on *Asia Pac. Agr* fails for two reasons. First, to the extent she relies on the case for the mandate that the court *must* hold an evidentiary hearing before imposing a terminating sanction, she extends the case's reasoning too far. *Asia Pac. Agr.* did state that "[w]here the question of fabrication is disputed, it may be appropriate to resolve the dispute on the basis of factual findings following an evidentiary hearing," (*id*. at \*11), and the key verb in the court's statement is "may," which suggests a non-mandatory instruction. Furthermore on this point, the *Asia Pac. Agr.* court based its terminating sanction primarily, if not solely, on the plaintiff's discovery obstruction and *not* on fabricated evidence, thus making dicta the discussion of sanctions based on that ground.

Second, Lee has not shown that an evidentiary hearing would serve any purpose, because she makes no argument and presents no competent evidence to call into question the admissible expert evidence of fabrication the Defendants have submitted. Lee effectively has conceded Brillhart's qualifications as a forensic computer expert and made no specific challenge to his methodology. She never deposed Brillhart, despite ample opportunity to do so. And she neither offered nor referred to in her opposition brief any competent evidence of her own that she would introduce at a hearing to challenge Brillhart's analysis.

Lee's only evidence consists of two short answers contained on a single page excerpted from her deposition, in which she simply denies, when asked, whether she falsified or fabricated text messages. (ECF No. 101-1, at 2.) Far from the "emphatic" *Asia Pac. Agr.* plaintiff's denials that were supported by at least some corroborating evidence, here Lee's deposition denials are general, vague, and conclusory, and not supplemented by affidavit or declaration in which she offers details or specific assertions to dispute the factual premises and assumptions about the text messages upon which Brillhart bases his analysis and conclusions. No purpose would be served by conducting an evidentiary hearing, and the court declines to do so.

Accordingly, absent any competent evidence to the contrary, the court finds the record overwhelmingly establishes that Lee fabricated the text messages in question.

II.    Five Factors.

Although a district court is not required to make express findings on each of the Ninth Circuit's five *Anheuser-Busch* public-interest factors, the nature of Lee's conduct and the severity of the potential consequence of dismissal warrant discussing each factor here. With respect to the first two, expeditious resolution and managing the docket, Lee's proffer of the text messages

required the court to enter, review, and consider false evidence throughout these proceedings, evidence that should never have been submitted in the first instance. Lee's deliberately deceptive conduct wasted the time and resources of the court, of the Defendants, and of her own attorneys. Added to the falsity of the text messages is that Lee, as did the plaintiff in *Asia Pac. Agr*., obstructed discovery in the case by her continued failure to produce the text messages in electronic format, as Defendants requested, and her failure to preserve and produce her other three or four cell phones, despite Defendants' appropriate requests that she provide them.

The third factor turns on whether Lee's actions impaired the Defendants' ability to go to trial, threatened to interfere with the rightful decision of the case, or forced Defendants to rely on incomplete and spotty evidence. *Leon*, 464 F.3d at 959 (citing *U.S. for Use & Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co.*, 857 F.2d 600, 604 (9th Cir. 1988)). There is no question here that Lee's conduct threatened to distort the rightful resolution of the case by forcing Defendants to rebut manufactured evidence. The false evidence very well may *have* obscured the truth and affected the resulting judgment, had it not been for Defendants' retention of Brillhart, who discovered the fabricated text messages. Lee's fabricated evidence forced Defendants, at least initially, to proceed in the case on the premise the evidence was authentic when it in fact was false, a result even more egregious than *Leon* contemplated. Thus, the first, second, and third factors all favor imposition of a terminating sanction.

The fourth factor, public policy favoring disposition on the merits, generally is not served by dismissal, but Lee's conduct in this case undermines the very purpose of this policy: the preservation of the court's truth-telling function. Here, the court's and a jury's ability to deduce fact from fiction and to reach an accurate decision on the merits already has been compromised by Lee's use of the

fabricated text messages. *See e.g., Consumer Fin. Prot. Bureau v. Morgan Drexen, Inc.*, 101 F. Supp. 3d 856, 874 (C.D. Cal. 2015) (granting terminating sanctions despite public policy favoring disposition on the merits because "the ability to reach a merits determination has already been compromised by the falsification of evidence.")). Further, this single "factor, standing alone, is insufficient to outweigh the other four factors if each is otherwise present." *See U.S. ex rel. Berglund v. Boeing Co.*, 835 F. Supp. 2d 1020, 1054 (D. Or. 2011) (citing *Leon*, 464 F.3d at 960–61) ("[Plaintiff]'s continuing misconduct in this case has made impossible a fair resolution on the merits and outweighs this important policy.").

Finally, the fifth factor, evaluating less drastic sanctions, is discussed in Section V, *infra*.

III.    Willfulness, Fault, or Bad Faith.

A party's interference with evidence, at least in the context of spoliation, qualifies as willful if the party "has some notice that the documents were potentially relevant to the litigation before they were discarded." *Leon*, 464 F.3d at 959; *see also U.S. ex rel. Berglund,* 835 F. Supp. 2d at 1054 (citing *In re Napster, Inc.,* 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006) ("As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action.")). Here, Lee knew the text messages would be relevant evidence in any lawsuit that arose from her allegations of harassment. The proof of this proposition is that Lee submitted text messages to her lawyer for use in supporting her BOLI complaint against Trees and Sims. Subsequently, she used the text messages to support the allegations in this lawsuit. Lee makes no argument to the contrary.

In addition, the nature of the falsification and the means by which it was executed also demonstrate the willfulness and bad faith contemplated in *Leon*. Lee carefully and intentionally

manipulated and interspersed Sims's actual text messages with strategically crafted false text messages to lend support for her claims. She also failed to preserve her phones and withheld the native, electronic versions of the text messages, in all likelihood to conceal her wrongdoing. Despite clear notice that the fabricated text messages in their original electronic format, along with the additional cellphones, were relevant and in fact central to the litigation Lee herself commenced, Lee chose to falsify the text messages and withhold both the electronic versions of the real messages and her other three or four phones. That is willful conduct warranting sanctions.

IV.    Due Process.

Due process protections require that a sanctioned party's misconduct bear a sufficiently close nexus to the matters in controversy in the case. Here, Lee's conduct is directly related to the merits of the issue her case raises: whether Sims, and through him, Trees subjected her to sexual harassment and *quid pro quo* harassment. Lee's fabricated text messages, which she provided to BOLI only in printed form, directly led to BOLI's finding of substantial evidence of discrimination, a result that bolstered the apparent strength of Lee's allegations against Trees and Sims. In this lawsuit, her text messages likewise formed the critical evidence in support of her allegations against the Defendants. Lee's fabricated text messages allowed her to sustain her lawsuit against the Defendants for more than two years, and forced the Defendants to incur significant time and expense to expose her falsification of evidence. As such, a due process nexus is satisfied here.

Lee's misconduct is the very form of transgression that threatens to interfere with the rightful decision of the case, as articulated in *Wyle*. The withholding of relevant, discoverable evidence and, even more egregious, the submission of false evidence to the court, undermines both the judicial process itself and the public's confidence in that process. Such deception is "utterly inconsistent

with the orderly administration of justice." *Consumer Fin. Prot. Bureau,* 101 F. Supp. 3d at 872 (citing *Wyle*, 709 F.2d at 589) (entering default judgment against a party that "willfully and in bad faith engaged in a coordinated and extensive effort to deceive . . . the Court, opposing counsel, and even their own counsel" by creating and submitting false evidence").

V.     Remedy.

Lee contends that sanctions less severe than dismissal will suffice as a remedy, but on the record in this case and in light of the circumstances of Lee's conduct, they will not.  First, Lee has already made clear she lacks meaningful financial resources; thus, ordering monetary sanctions is unlikely to adequately address or remedy the wrong here.  *See Stewart,* 2016 WL 3566731, at *3 (ordering termination, noting "[b]ecause of plaintiff's insolvency, monetary sanctions are not appropriate to address and remedy the conduct").  Second, limited issue or evidentiary sanctions are not appropriate, because the challenged text exchanges underlie the entire dispute, and without them, little to no evidence of the alleged discrimination would remain.  *See Leon*, 464 F.3d at 960 (affirming that lesser sanctions, like the exclusion of evidence or a jury instruction creating an evidentiary presumption, are insufficient if they would be "futile").  Third, Lee's pattern of deception casts doubt upon other evidence she has provided and may yet provide.  *See Anheuser–Busch, Inc.*, 69 F.3d at 352 (noting past deception will "likely mean it will be impossible for the court to conduct another trial with any reasonable assurance that the truth would be available" and rejecting lesser sanctions "where the court anticipates continued deceptive misconduct"); *Consumer Fin. Prot. Bureau*, 101 F. Supp. 3d at 875 (granting terminating sanctions "based on the extent of Defendants' misrepresentation and falsification of evidence, [since] the Court anticipates that Defendants would continue to deceive the Court, its own trial counsel, and opposing counsel if . . . allowed to proceed

to trial").

Fourth, termination is appropriate here because any lesser sanction would suggest to future litigants that they may manufacture evidence and suffer no meaningful consequences if caught, because they would still be able to maintain a claim or defense against the opposing party — a message equivalent to the "no harm, no foul" adage. Such an outcome would do nothing to dissuade such conduct in the future. *See, e.g., Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 643 (1976) (per curiam) (affirming terminating sanctions below because dismissal "must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent").

Finally, dismissal of Lee's claim is critical to preserving public confidence in the courts. As this court observed in *U.S. ex rel. Berglund*,

> The rules of civil procedure [] exist to guide parties through the litigation process in difficult cases and their obligation is to conduct themselves in a manner that protects the integrity of the process. Berglund intentionally acted to circumvent those rules, in disregard of the integrity of the judicial process. Such conduct transcends this case and severely damages the reliability of, and the public's confidence in, the judicial system. The penalty thus should hold Berglund accountable. Accordingly, Berglund's deliberate and deceptive practices directed at the merits of the controversy warrants dismissal of his retaliation claim.

835 F. Supp. 2d at 1056. That rationale is equally applicable in this case. Consequently, dismissal with prejudice is the only appropriate sanction.

/ / / / /

/ / / / /

/ / / / /

*Conclusion*

The court therefore GRANTS Defendants' Motion for Terminating Sanction (ECF No. 93) and dismisses Lee's claims with prejudice.

DATED this 6th day of November, 2017.

/s/ John V. Acosta
JOHN V. ACOSTA
United States Magistrate Judge
